**Anthony RODIC, Plaintiff-Appellee,**

v.

**THISTLEDOWN RACING CLUB, INC., Thoroughbred Racing Association, Thoroughbred Racing Protective Bureau, and Ohio State Racing Commission et al., Defendants-Appellants.**

**Nos. 77–3495 to 77–3497.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 8, 1979.

Decided Feb. 26, 1980.

Rehearing Denied April 14, 1980.

Jerome S. Kalur, Weston, Hurd, Fallon, Paisley & Howley, Leslie R. Evans, Cleveland, Ohio, for defendants-appellants in No. 77–3495.

Leslie R. Evans, Cleveland, Ohio, for plaintiff-appellee in No. 77–3495 and plaintiff-appellant in No. 77–3497.

William J. Brown, Atty. Gen. of Ohio, George E. Lord, William J. McDonald, Asst. Attys. Gen., Columbus, Ohio, for defendants-appellants in No. 77–3496.

Leslie R. Evans, William M. Fumich, Jr., Cleveland, Ohio, for plaintiff-appellee in No. 77–3496.

Jerome S. Kalur, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, William J. Brown, Atty. Gen. of Ohio, George E. Lord, William J. McDonald, Asst. Attys. Gen., Columbus, Ohio, for defendants-appellees in No. 77–3497.

Before EDWARDS, Chief Judge, MERRITT, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Plaintiff-appellee Anthony Rodic brought this civil rights action under 42 U.S.C. § 1983 alleging that defendants-appellants Thistledown Racing Club, Inc., Thoroughbred Racing Association and Thoroughbred Racing Protective Bureau (hereinafter referred to collectively as Thistledown) denied him due process of law by excluding him permanently from Thistledown Racetrack without affording him a hearing.

The district court agreed that Rodic should have had a hearing, but found that the validity of the expulsion had been determined by state courts in litigation filed by Rodic and that the only remaining issue was whether permanent exclusion is an appropriate sanction. The court ordered the defendant-appellant Ohio State Racing Commission to afford Rodic a hearing on that question but denied Rodic's prayer for damages.

Thistledown appeals from the district court's decision on the ground that Rodic's exclusion was not state action within the meaning of § 1983. The Racing Commission asserts that, even if state action was

involved, it has no jurisdiction to hear Rodic's complaint.

We hold that, under the peculiar facts and circumstances of this case, Rodic had no liberty or property interest in attending races at Thistledown on which to base a due process claim under § 1983. Accordingly, we reverse and remand the case with directions to dismiss the complaint. We do not reach the questions whether Thistledown acted under color of state law in expelling Rodic and whether the Racing Commission has jurisdiction to review the validity of the sanction.

I.

The facts are important to our decision and we shall review them at some length. Apparently, the parties did not consider the facts to be important. They submitted the case to the district court on general stipulations to the effect that Rodic was barred permanently from the racetrack without receiving a hearing and that he had been unsuccessful in his state court tort action against Thistledown based on his permanent expulsion. The record in the district court does not even disclose the reason Rodic was expelled.

Because this court sits to decide real cases, not abstract questions of law, and because an adequate understanding of a case is essential to our decision, we have examined the record in the state court in an effort to ascertain the facts. "Federal courts may take judicial notice of proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969) (citing cases), *cert. denied*, 397 U.S. 1065, 90 S.Ct. 1503, 25 L.Ed.2d 686 (1970). We take judicial notice that this appeal arises from the same facts that formed the basis for the judgment in *Rodic v. Thistledown Racing Club, Inc.*, No. 910,979 (Court of Common Pleas, Cuyahoga County, Ohio, Dec. 1975).

In July 1972, Rodic attended a horse race at Thistledown and bet on a horse known as Captain Fudge, the favorite in his race. Captain Fudge finished second. Rodic claims that he learned later that Captain Fudge's trainer, whose son rode Captain Fudge in the race, had bet on the horse that finished first. This apparently led Rodic to believe that the trainer and jockey had held Captain Fudge back so that the other horse could win.

On July 31, 1972, Captain Fudge ran again and won. Rodic went to the winner's circle and shouted allegations that the trainer and jockey had fixed Captain Fudge's earlier race. A security policeman took Rodic to the security office where several patrons accused Rodic of using foul and profane language. The security police then expelled Rodic from the racetrack and told him not to return for the balance of the racing year.

When Rodic returned on August 24, 1972, the Chief Security Officer of the racetrack, an employee of the Thoroughbred Racing Protective Bureau, told Rodic that he was to be barred permanently from entering the racetrack or its environs. The officer, Raymond Mosshart, testified by deposition in the state court that he based his decision to bar Rodic permanently on evidence that Rodic had used profane and vulgar language, threatened another racetrack patron and had been a tout [1] for at least two years before he was expelled.

Rodic then filed a tort action in the Common Pleas Court for Cuyahoga County, Ohio. He claimed that he had been wrongfully ejected and excluded from the racetrack, wrongfully arrested, falsely imprisoned, libeled and slandered by the defendants. The state court found that Ohio law permits a racetrack to eject and exclude patrons for any reason other than their race, creed, color or national origin. Since Rodic's expulsion and exclusion were based on other grounds, the court dismissed those

1. A "tout" is a person who "gives a tip on a racehorse for an expected compensation but especially in hopes of a share of the winnings." Webster's Third New International Dictionary (1963).

portions of the complaint. The court also dismissed the wrongful arrest claim on the ground that Rodic had never been arrested. The case went to trial on the false imprisonment, libel and slander claims, and the jury returned a verdict for defendants on all counts.

Rodic thereafter filed this civil rights action in the district court arguing that due process entitled him to a hearing on the validity and duration of his exclusion. The district court found:

> The activities of Thistledown Racing Club, Inc., and the Ohio State Racing Commission and the State of Ohio are so closely intertwined that the Thistledown Racing Club and the State of Ohio are virtually "partners" in the conduct of thoroughbred racing . . . and [this] vests the activities of Thistledown Racing Club with the color of state law. *Rodic v. Thistledown Racing Club, Inc.,* No. C76–932, Slip Op. at 3–4 (N.D.Ohio, filed June 21, 1977).

Accordingly, the district court held that due process entitled Rodic to a hearing before he could be deprived permanently of his liberty to attend the track.

The court found, however, that the trial in the state court tort action had resolved the damage issues and satisfied the due process hearing requirement as to the validity of Rodic's expulsion. The court felt that due process also entitled Rodic to a hearing as to the duration of his exclusion, and ordered the Racing Commission to conduct such a hearing.

Thistledown and the Racing Commission appeal from the decision of the district court that state action is involved. The Racing Commission appeals from the requirement that it conduct the hearing. Rodic appeals from the denial of damages.

## II.

In order to maintain an action under 42 U.S.C. § 1983,[2] a plaintiff must show that he has been deprived of a constitutional right by a person acting under color of state law.

Rodic claims that his expulsion from Thistledown violated his fourteenth amendment due process rights. Specifically, he alleges that Thistledown was acting under color of state law and therefore had to afford him a due process hearing before it could deprive him permanently of his liberty and property interests in attending races at the track.

The fundamental flaw in Rodic's complaint is its failure to point to a specific state- or federal-law source for his claimed property or liberty interest in visiting Thistledown. The Supreme Court's recent opinion in *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979), *reversing* 574 F.2d 874 (6th Cir. 1978), reiterated the current majority view that an individual has no right to a due process hearing unless he can show that he has been deprived of a state-created property right or a federally secured liberty interest. Unless Rodic can clear this initial hurdle, the state-action question, which the district court deemed controlling and to which the parties have devoted most of their attention on appeal, is irrelevant.

We do not believe Rodic has a property interest in attending races at Thistledown. As the Supreme Court has observed on numerous occasions, "the Constitution does not create property interests. Rather it extends various procedural safeguards to certain interests 'that stem from an independent source such as state law'." *Leis v. Flynt, supra,* 439 U.S. at 441, 99 S.Ct. at 700 (*quoting Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972)). Therefore, if Rodic has a property

2. **§ 1983.  Civil action for deprivation of rights**
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

interest in being admitted to Thistledown, it must derive from a statute, legal rule or mutually explicit understanding that entitles him to attend races there. *See Perry v. Sinderman*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ Rodic, however, has cited no federal or state statute, rule of law, or understanding that entitles him to visit Thistledown. There is no federal law of which we are aware creating a general right to be admitted to racetracks. Even Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–2000c, which deals with public accommodations including racetracks (§ 2000a(b)(3)), creates only a right not to be discriminated against on the basis of race, color, religion, or national origin; it does not purport to guarantee admission. Moreover, as the Common Pleas Court for Cuyahoga County, Ohio, held in Rodic's tort action against Thistledown, Ohio law permits racetracks to "admit as spectators only those whom [they] may select and exclude others, so long as the exclusion is not founded on race, creed, color or national origin." Thus, state law creates no right of admission. Nor do the administrative rules governing Thistledown's operations mandate that the track admit all would-be spectators.[3] Under these circumstances, we do not believe Rodic's expulsion deprived him of a property interest.

■ Nor has Rodic alleged that his expulsion deprived him of any constitutionally protected interest other than his right to due process of law. There is no independent right to due process, however; one is entitled to due process only if the state deprives him of pre-existing property or liberty. *Leis v. Flynt, supra.* Had Rodic alleged that he was excluded on some impermissible basis, for example because of his race or his exercise of first amendment rights, we might have a different case. *See, e. g., Perry v. Sinderman, supra*, 408 U.S. at 597, 92 S.Ct. at 2697. The gist of Rodic's complaint, however, is not that his expulsion was wrongful but that it was done without a hearing. As such, the complaint does not allege a denial of liberty on which to base a due process claim.

The case is reversed and the cause remanded to the district court with directions to dismiss the complaint. No costs are taxed.

---

3. In fact, only two of the Ohio Rules of Racing apply to spectators at all. RC–13–15 recognizes the racetrack's right to expel undesirable persons:

> RC–13–15—If any licensed person uses improper language to the racing officials or threatens such officials, or if any person uses profane or indecent language, carries or exhibits a deadly weapon, or otherwise disturbs the peace of any race track enclosure, he may be ejected, fined, suspended or ruled off. Effective March 15, 1966.

However, this regulation does no more than codify the racetrack owner's common law property right to eject or exclude patrons for reasons other than their race, creed, color or national origin. *See Marrone v. Washington Jockey Club*, 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679 (1913); *Watkins v. Oaklawn Jockey Club*, 86 F.Supp. 1006 (D.Ark.1949), *aff'd* 183 F.2d 440 (8th Cir. 1950). RC–5–12 prohibits touts and touting on racetrack premises:

> RC–5–12—No tipster or tout shall be permitted to operate on the premises of any permit holder. The permit holder shall, under penalty of loss of permit, take steps to prevent any touting upon its premises and may be held accountable for any touting found to exist thereon. Effective March 15, 1966.

This regulation, however, is related to the State's control of parimutuel wagering; its application to spectators is only incidental. Neither regulation creates by negative implication a right of nonoffending patrons to be admitted to Thistledown.