Eva Ng BERGSTROM,

v.

Dr. Ann M. BUETTNER, Judy L. Demers, Dr. Edwin C. James, Dr. Reed T. Keller, Dr. Harvey Knull, Dr. Maurice L. Lindblom, Dr. Jeanne Oberpriller, Dr. Norb O'Keefe, Dr. Richard A. Olafson, Dr. Dwayne A. Ollerich, Dr. Mark D. Olson, Dr. Albert F. Samuelson, Dr. John W. Vennes, Physicians and/or Members of the Teaching Faculty and/or Administration of the University of North Dakota School of Medicine; Dr. Thomas M. Johnson, Dean of the University of North Dakota School of Medicine; Steven Brink, Nikki Dietz, Lori Defrance, and Keith Leatherbury, Student Members of the Student Performance and Recognition Committee of the University of North Dakota School of Medicine; The University of North Dakota School of Medicine, and its Student Performance and Recognition Committee; The University of North Dakota; and the State Board of Higher Education.

Civ. No. A1–86–111.

United States District Court,
D. North Dakota,
Southwestern Division.

March 10, 1987.

David C. Thompson, Fargo, N.D., Andrea F. Rubenstein, Minneapolis, Minn., for plaintiff.

Gary R. Thune, Bismarck, N.D., for defendants.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

Plaintiff sues under sections 1983, 1985, and 1986, Title 42, United States Code, alleging that defendants unconstitutionally deprived her of her procedural and substantive due process rights, that defendants conspired to deprive her of her constitutional rights, and that defendants failed to terminate or report the conspiracy to deprive her of her constitutional rights. The case is now before the court on defendant's motion for summary judgment.

Summary judgment is appropriate where there are no genuine issues of material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## FACTS

Eva Bergstrom enrolled in medical school in August 1982. In her first two years of medical school, she received Incompletes in Gross Anatomy, Physiology, and Pathology; these grades were changed to Satisfactory after remediation.[1]

In June 1984, Bergstrom took and failed Part I of the National Board of Medical Examiner's Test (NBME). Successful completion of the test was required in order to continue medical studies. In September 1984, she re-took the test and passed.

In her third year clerkship, she took rotations at the facilities in Fargo, North Dakota, in the areas of Internal Medicine, Radiology, and Surgery. She also completed rotations in Obstetrics/Gynecology (OB/GYN), Psychiatry, Orthopedic Surgery and Pediatrics. Plaintiff initially received an Incomplete in OB/GYN, which remained on her record until August 1985. She satisfactorily completed Psychiatry, Pediatrics and Orthopedic Surgery. She received Unsatisfactories in Internal Medicine, Surgery, and Radiology.

### Internal Medicine Rotation

This rotation involved a six-week clinical rotation at the Veteran's Administration Hospital, and a six-week clinical rotation at the Dakota Hospital in Fargo, North Dakota. Grading criteria were provided on the first day of the rotation. According to those criteria, seventy-five (75) points were required to pass. Plaintiff received 68 points. She also took the NBME, Part II; her score on the Internal Medicine portion of the test was below the first percentile nationally, and "the lowest score we had ever received at UND."

Plaintiff was notified of her grade of unsatisfactory on July 5, 1985. Remediation was recommended, but she was suspended from her studies before she could complete the remediation.

### Surgery Rotation

This rotation involved nine weeks of general surgery, beginning with an orientation session held on January 2, 1985. Defendants assert that oral information was given regarding a minimum preceptor evaluation of 70%. Plaintiff alleges that on March 2, 1985, she asked the instructor what the minimum required score was, and that the instructor stated 70%. Plaintiff alleges that she was informed that this percentage was arrived at by averaging all of the parts of the rotation: performance evaluations, quizzes, and the final exam.

Plaintiff received a preceptor evaluation of 69.667%; her overall average in surgery

---

**1.** Remediation is a process whereby students are permitted to complete additional weeks of study and/or practice on a specific subject in which they are not performing satisfactorily, in the hopes that they will complete the remediation with passing scores, and thereby continue with their medical studies.

was 76.3475%. Since her preceptor evaluation was below 70%, she received an Incomplete, and was given an opportunity to raise her score through a four-week remediation plan. The Incomplete was changed to an Unsatisfactory after remediation.

### Radiology Rotation

This rotation largely involved a weekly lecture coupled by seven quizzes. The students were given a list of "Ten General Objectives" at the outset of the rotation, but that list did not contain passing criteria for the course. Plaintiff ultimately received a 61% in the rotation, which was well below the class average of 84%. It was also the lowest average score achieved by a third year student in the Radiology clerkship during the four years that the clerkship had been offered.

Plaintiff received an Incomplete in the rotation, and was given an opportunity to remediate by reading a book on radiology, outlining the text, and discussing its content with her instructor. The plan was never implemented, however, because of her suspension.

Overall, plaintiff cumulatively made nineteen appeals of her grades in Radiology, Surgery, and Internal Medicine. All of the appeals ultimately resulted in affirming her grades.

Medical school regulations provided that if a student received two Unsatisfactories in one term, s/he was potentially subject to suspension and dismissal. Three Unsatisfactories in one term resulted in automatic dismissal.

On September 24, 1985, the Student Performance and Recognition Committee, a committee comprised of students and faculty, met and considered whether plaintiff should be dismissed from the medical school. During a three hour and twenty minute meeting, they reviewed her entire academic record, and concluded that dismissal was appropriate. Plaintiff appealed this decision, and on March 21, 1986, the Committee again considered her dismissal, and, after three hours of deliberation, voted unanimously to affirm their decision.

### Factual Summary

Ms. Bergstrom washed out of medical school on the basis of claimed unsatisfactory academic performance.

She was given an Unsatisfactory in Radiology, a course which appears to be one of form rather than substance, and one where no student has ever been given less than a passing grade.

She was given an Unsatisfactory in general surgery. Her overall or composite score in that rotation was 76%. Seventy percent (70%) is passing, but the school requires that 70% be obtained in all segments of the course. Two of the three subjective evaluations of the preceptors were below 70%.

She was also given an unsatisfactory in internal medicine, and apparently succeeded in obtaining a miserable score on the internal medicine section of the national board exam.

A review of the materials filed shows that Ms. Bergstrom has the ability to generate animus. Her counsel appears to urge that her lack of diplomacy eventually led to a faculty decision that she should not graduate, and that her academic problems followed, rather than preceded, that decision. He may be correct, but no evidence is available to demonstrate it.

### LAW

In order to make out a claim under either section 1983, 1985 or 1986, a party must show the denial of some constitutional right or privilege. Plaintiff alleges that she has been unconstitutionally deprived of her procedural and substantive due process rights.

### Procedural Due Process

■ In an academic dismissal case such as this one, the only process which is due is an informal review and evaluation between the dismissing body and the student. *Board of Curators of University of Mo. v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (dismissal for disciplinary reasons requires notice and formal hearing; dismissal for academic reasons requires only an informal give-and-take be-

tween student and administrative body dismissing him).

The record amply demonstrates that plaintiff received numerous hearings regarding her grades and her ultimate dismissal. This court finds that defendants satisfied procedural due process requirements.

*Substantive Due Process*

■ Plaintiff presents a somewhat unique approach to her substantive due process claims. Plaintiff appears to assert that she has a property interest in continued enrollment, and that her dismissal unconstitutionally deprived her of that protected property interest. Plaintiff asserts that the Medical school's regulations required that they issue written grading criteria on the first day of a rotation, that those regulations created a protected interest *in receiving written grading criteria on the first day of class,* which forms a contractual basis for the claimed property right in continued enrollment, and that the medical school's failure to issue written grading criteria thus unconstitutionally deprived her of her protected interest.

Plaintiff further argues that the calculation of her grade in surgery was arbitrary and capricious, and designed to result in her failure.

The fifth and fourteenth amendments to the United States Constitution protected a person's right to not be arbitrarily or capriciously deprived of life, liberty or property. It is clear that property interests are not created by the Constitution, but are created and defined by existing rules or understandings that stem from an independent source such as state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Ikpeazu v. University of Neb.,* 775 F.2d 250, 253 (8th Cir.1985). The relationship between a university and its students is ordinarily contractual in nature, and the terms of the contract may be implied from a student handbook or other statement of university policy. *Ikpeazu,* 775 F.2d at 253 (grievance procedure implied contractual expectation in students that they will not be graded capriciously, and thus created cogniza-

ble property right in nonarbitrary grading); *Corso v. Creighton University,* 731 F.2d 529 (8th Cir.1984).

The first issue before this court is whether the University's regulation created a protected property interest in plaintiff (to receive written grading criteria on the first day of class), and, if so, whether failure to provide written grading criteria violated plaintiff's substantive due process rights.

Although state law creates the property interest, it is federal constitutional law which determines whether that property interest rises to the level of a constitutionally protected interest. *Memphis Light, Gas & Water Div'n v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). In *Board of Regents v. Roth,* the Supreme Court set out its most definitive statement of "property" for purposes of the due process clause:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined....

408 U.S. at 577, 92 S.Ct. at 2709. The hallmark of "property" is an individual entitlement grounded in state law, which cannot be removed except for cause. "Once that characteristic is found, the types of interests protected as 'property' are varied and, as often as not, intangible, relating to the whole domain of social and economic fact." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (right to use FEPA's adjudicatory procedures a protected property interest).

This court finds that the medical school regulation stating that written grading criteria would be issued on the first day of a rotation does not rise to the level of a constitutionally protected property interest.

*Cf. Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (food stamp benefits are matter of statutory entitlement, and therefore a protected property interest); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (State created entitlement to free public education gives rise to protected property interest); *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir.1986) (constitutionally protected property right in building permit); *Signet Constr. Corp. v. Borg,* 775 F.2d 486 (2d Cir.1985) (contractor had constitutionally protected property interest in timely payment for work performed under contract); *Berg v. Shearer,* 755 F.2d 1343 (8th Cir. 1985) (unemployment benefits are property right); *Pastrana v. United States,* 746 F.2d 1447 (11th Cir.1984) (pilot certificate is cognizable property interested protectable by due process clause); *Johnson v. United States Dept. of Ag.,* 734 F.2d 774 (11th Cir.1984) (once FmHA loan made, property interest arises). *And cf. Adams v. James,* 784 F.2d 1077 (11th Cir.1986) (inmate does not have protected property interest in assignment to job as law clerk); *Callaway v. Block,* 763 F.2d 1283 (11th Cir.1985) (peanut farmers have no property interest in national peanut quota); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54 (2d Cir.1985) (no property interest in zoning board of appeal certificate of location approval); *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428 (9th Cir.1985) (no cognizable property interest in right to continue business in violation of tax laws); *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736 (6th Cir.1980) (no property interest in attendance at race track); *Nelson v. Mustian,* 502 F.Supp. 698 (D.Fla.1980) (right to wear unlimited number of rings does not rise to level of fundamental freedom). The medical school's failure to distribute the written criteria did not violate plaintiff's substantive due process rights.

■ As to plaintiff's allegation that the grading process for her Surgery rotation was arbitrary and capricious, this court finds that significant issues of material fact exist as to grading criteria in the Surgery rotation, and various communications allegedly made to plaintiff by defendants regarding those criteria. If this court found that the grading process was arbitrary and capricious, and that the medical school was required to base plaintiff's grade on the cumulative average of all parts of that rotation, this finding would vitiate the validity of the defendants' consideration and ultimate determination to dismiss plaintiff. Accordingly, summary judgment as to that issue is inappropriate.

The court is of the opinion that Ms. Bergstrom is engaged in a war which cannot be won. If the medical school faculty has in fact determined that she should not be a graduate of the school, no performance level on the remaining courses will prove to be satisfactory. No coerced unilateral resolution appears possible. Nevertheless, Ms. Bergstrom is entitled to her day in court and an attempt to satisfactorily resolve her differences with the medical school, however futile that may ultimately prove to be.

Based on the foregoing, it is the ORDER of this court:

THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS GRANTED AS TO ALL CLAIMS EXCEPT PLAINTIFF'S CLAIM THAT DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY IN DETERMINING THAT SHE HAD RECEIVED AN UNSATISFACTORY GRADE IN HER SURGERY ROTATION. THAT ISSUE IS PRESERVED FOR TRIAL, OR FURTHER DISPOSITION BY MOTION.