**SIGNATURE COMBS, INC., et al., Plaintiffs,**

v.

**UNITED STATES OF AMERICA, et al., Defendants.**

**Nos. 98–CV–2777D, 98–CV–2968D, 00–CV–2245D.**

United States District Court, W.D. Tennessee, Western Division.

Feb. 14, 2003.

William E. Norcross, Norcross Law Firm, Cordova, TN, for Plaintiffs.

Veronica F. Coleman, Sidney P. Alexander, U.S. Attorney's Office, Memphis, TN, Naikang Tsao, Michele L. Walter, US Department Of Justice Environmental Defense Section Washington, DC, Anne Foster, U.S. Environmental Protection Agency, Dallas, TX, for U.S.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

DONALD, District Judge.

This matter is before the Court on Defendant Mueller Copper Tube Products, Inc. ("Mueller")'s motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Count I of Plaintiffs Signature Combs, Inc., et al. ("Plaintiffs")' Third Amended Complaint ("Complaint") seeking cost recovery under CERCLA § 107. Def.'s Mot. To Dismiss, Doc. # 256–1, Case # 98–cv–02777; Doc. # 235–1, Case # 98–cv–02968. Mueller [1] contends that, because Plaintiffs are Potentially Responsible Parties ("PRP"s) who have resolved their liability to the Environmental Protection Agency ("EPA") and the Arkansas Department of Pollution Control and Ecology ("ADPC & E") by entering into a Consent Decree, they are precluded from bringing their CERCLA § 107 claim by the Sixth Circuit's decision in *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir.1998). The two issues before this Court are: 1) whether Plaintiffs are PRPs; and 2) if so, whether Plaintiffs are precluded from bringing a § 107 cost recovery claim after entering into the Consent Decree. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court **GRANTS** Mueller's motion to dismiss Count I of the Complaint.

### I. *Background Facts and Procedural History*

This case arises from an ongoing effort to clean up and hold parties responsible for two hazardous waste sites in West Memphis, Arkansas. According to Plaintiffs' Third Amended Complaint (Doc. # 151), ¶¶ 59–71, sometime in the 1940s, William Gurley began operating Gurley Oil Company ("GOC"), a company which collected used oil from facilities in and around Memphis, Tennessee. In or about 1959, Gurley began operating Gurley Refining Company ("GRC"), which recycled oil collected from GOC. From its inception through 1970, GRC deposited sludge and filter material generated by its re-refining efforts into a pit at a local landfill in West Memphis now known as the South 8th Street Landfill Superfund Site ("South 8th Street Site"). In 1970, GRC ceased depositing its sludge and filter material at the South 8th Street Site and began depositing this waste at a landfill located near Edmondson, Arkansas, in an area now known as the Gurley Pit Superfund Site ("Gurley Pit Site"). Gurley continued depositing sludge and filter material at the Gurley Pit Site until 1976.

The EPA learned of contamination at the Gurley Pit Site in 1978 and at the

---

1. Defendants Colvett Chrysler–Plymouth, Inc., Continental General Tire, Inc., Fineberg Packing Co., Frito–Lay, Inc., Jim Keras Buick Co., Lewis Ford, Inc., Lone Star Industries, Inc., Tate Logistics, Inc., Pat Patterson Motor Sales, Inc., Seruggs Equipment Co., Inc., Southern Trucking Co., Super Service Motor Freight, Inc., The Southern Co., Inc., Turner Dairies, Inc., Whitington Trucks, Inc., Wooten Oil Co., Inc., Wooten Truck and Tractor Co., and Southern Cab Corp. d/b/a/ Yellow Cab Co. moved to join this motion to dismiss on August 29, 2002. *See* Joinder of Certain Defs. In Co–Defs.' Mots. To Dismiss or For Summ J. Defendant Mason & Dixon Truck Lines, Inc. moved to join this motion to dismiss on September 30, 2002. *See* Joinder of Def. Mason & Dixon in Mots. To Dismiss or For Summ. J.

South 8th Street Site in 1979. The EPA placed the Gurley Pit Site on the National Priorities List, pursuant to CERCLA Section 105, 42 U.S.C. § 9605, on September 8, 1983. The EPA placed the South 8th Street Site on the National Priorities List on October 14, 1992. Specifically, the EPA found that the used oil collected by GOC and delivered to GRC, along with the sludge and filter material deposited both at the South 8th Street Site and at the Gurley Pit Site, contained "hazardous substances" as defined in CERCLA Section 101(14), 42 U.S.C. § 9601(14). In February 1984, the EPA undertook a Remedial Investigation and Feasibility Study ("RI/FS") of the Gurley Pit Site, pursuant to 40 C.F.R. § 300.430. The EPA completed this RI/FS in May 1985, and prepared a separate RI/FS for groundwater at the Gurley Pit Site on August 1, 1988. The EPA also undertook an RI/FS of the South 8th Street Site on June 29, 1992, and completed this RI/FS on June 30, 1993.

Based on these RI/FS Reports, the EPA chose two separate courses of action. For the Gurley Pit Site, the EPA initially divided its response into source control and groundwater operable units. The EPA issued its final Record of Decision ("ROD") for the source control unit on October 6, 1986, requiring treatment of contaminated sludges, sediments, and soils at the Gurley Pit Site, and placing the treated material in a vault at the north end of the pit. On September 26, 1988, the EPA decided that, assuming implementation of the source control remedy, no further action for the groundwater operable unit would be necessary. The EPA completed construction of the source control remedy at the Gurley Pit Site in September 1997.

For the South 8th Street Site, the EPA executed its ROD (as amended) on July 28, 1998. The remedial action requires treating the contaminated sludges and soils at the Site and capping the pit containing oily sludges.

On September 8, 1998, the United States filed *United States v. Aircraft Service International, Inc., et al.,* No. J–C–98–362 (E.D.Ark.), a cost recovery action against Plaintiffs in the case *sub judice,* to recover $10 million in response costs that the EPA allegedly incurred in implementing the Gurley Pit Site remedy. On September 9, 1998, ADPC & E filed *Arkansas Department of Pollution Control and Ecology v. Aircraft Service International, Inc., et al.,* No. J–C–98–363 (E.D.Ark.), a virtually identical cost recovery action, to recover at least $600,000 in ADPC & E response costs incurred in connection with the Gurley Pit Site. On November 18, 1998, the EPA issued Plaintiffs in the case *sub judice* a unilateral administrative order ("UAO") pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, for the South 8th Street Site. The UAO requires the recipients to implement the amended ROD by performing the remedial action that the ROD selected for the Site. The estimated cost of implementing the South 8th Street remedy is $4.15 million.

In response to these actions, on November 4, 1998, Plaintiffs brought the instant suit seeking to recoup their anticipated expenses from Defendants. Plaintiffs filed their Complaint on March 20, 2000, alleging that Defendants should share in Plaintiffs' cost recovery obligations stemming from the UAO and the pending lawsuits brought by the EPA and ADPC & E because the "bulk of the used oil that Gurley Oil collected during the 1960's and 1970's came from Defendants and/or their predecessors . . . ." Compl. ¶ 59. Count I of the Complaint asserts that Defendants are jointly and severally liable for cost recovery of Plaintiffs' past and future cleanup costs under CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3). Count II of the Complaint asserts that Defendants are several-

ly liable for contribution to Plaintiffs' past and future cleanup costs under CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1).

On December 19, 2000, Plaintiffs settled their lawsuits with the EPA and the ADPC & E, and resolved their obligations under the UAO, by entering into a Consent Decree with the United States and the ADPC & E regarding response costs for the Gurley Pit Site and remedial responsibilities for the South 8th Street Site. Without admitting liability, Plaintiffs agreed to conduct and pay for the South 8th Street Site cleanup and to reimburse the United States and the ADPC & E for their expenses incurred in cleaning the Gurley Pit Site.

## II. *Motion to Dismiss Standard*

A party may move to dismiss a complaint for failure to state a claim upon which relief may be granted under F.R.C.P. 12(b)(6). The purpose of a motion to dismiss under F.R.C.P. 12(b)(6) is to test the formal sufficiency of the claim, not to resolve the facts or merits of the case. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A claim should not be dismissed pursuant to F.R.C.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683.

In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Legal conclusions or unwarranted factual inferences, however, should not be accepted as true. *Lewis v. ACB Business Servs., Inc.,* 135 F.3d 389, 405–06 (6th Cir.1998).

## III. *Analysis*

Count I of the Complaint seeks to hold the Defendants jointly and severally liable under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), which states, in pertinent part, that any PRP shall be liable for:

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

Count I avers that each of the Defendants arranged for the disposal or treatment of wastes containing hazardous substances at the South 8th Street Site and the Gurley Pit Site, and that each Defendant should therefore be held jointly and severally liable for all costs incurred and to be incurred by Plaintiffs in cleaning up the two Sites. *See* Compl. at ¶¶ 78–79.

Defendant Mueller challenges the availability of this § 107(a)(3) claim to Plaintiffs. Relying on *Centerior,* Mueller contends that Plaintiffs, as PRPs who are compelled to conduct or pay for the Sites' cleanup, may only bring cost recovery actions pursuant to § 113(f). *See* Br. Of Def. In Supp. of Its Mot. to Dismiss at 2 (Doc. # 257).[2] Plaintiffs counter that *Centerior*

2. Section 113(f) states:
   (1) Contribution

Any person may seek contribution from any other person who is liable or potentially

does not necessarily preclude parties who enter into consent decrees from bringing § 107(a)(3) claims. *See* Pls.' Mem. Of Law In Resp. To Def.'s Mot. to Dismiss at 7–8 (Doc. # 291). To resolve the instant motion, this Court must first ascertain whether, based on the facts alleged in the Complaint, Plaintiffs are PRPs. If so, the Court must then determine whether PRPs who have voluntarily entered into a Consent Decree with the government that resolves all issues of liability, without admitting any liability, can bring a § 107(a)(3) claim against other PRPs.

A. *The Complaint Establishes That Plaintiffs Are PRPs*

To determine whether Plaintiffs are PRPs, the Court is limited to examining facts alleged in the Complaint. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed.1990).[3] In their Complaint, Plaintiffs state: "Each of the Defendants is a liable or potentially liable party under CERCLA Section 107(a), 42 U.S.C. § 9607(a) [a PRP], *to the same extent that Plaintiffs are.*" Compl. ¶ 84 (emphasis added). This statement presents the Court with two possibilities: either both Defendants and

liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.
(2) Settlement
A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.
(3) Persons not party to settlement
[]

Plaintiffs are PRPs or neither Defendants nor Plaintiffs are PRPs. Plaintiffs can only bring § 107(a) or § 113(f) claims against Defendants who are PRPs. *See* 42 U.S.C. §§ 9607(a), 9613(f)(1). Therefore, the Court construes ¶ 84 to be an admission that both Defendants and Plaintiffs are PRPs. Moreover, in light of their ¶ 84 admission, the Court rejects as inconsistent, if not disingenuous, Plaintiffs' new assertion in their response brief that Plaintiffs are not PRPs. *See* Pls.' Mem. at 7; Wright & Miller, *supra,* § 1366, at 491 ("The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.").

B. *Plaintiffs Cannot Bring a § 107(a) Claim Because They are PRPs Who Have Resolved Their Liability to the EPA and Arkansas By Entering Into the Consent Decree Legally Obligating Them to Pay For Cleanup of the Sites*

Defendant's motion is controlled by the Sixth Circuit's decision in *Centerior,* which delineated when a party may bring a § 107(a) claim. In *Centerior,* the EPA

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).
42 U.S.C. § 9613(f).

3. The Court may also take judicial notice of "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Wright & Miller, *supra,* § 1357, at 299; *see also* Pls.' Mem. at 4 n. 1 (citing *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.1980)). This latitude empowers the Court to analyze the contents of the Consent Decree along with the Complaint.

746

had issued a unilateral Administrative Order to the plaintiffs, requiring them to undertake and complete an emergency cleanup of the site at issue. During this cleanup process, the *Centerior* plaintiffs did not contest their status as PRPs, assert defenses to liability under § 107(a), or seek reimbursement for their response costs from the government pursuant to CERCLA § 106(b). *See Centerior*, 153 F.3d at 346. The plaintiffs did, however, bring suit against 125 other PRPs to recover their cleanup costs pursuant to § 107(a). The Sixth Circuit held that, because § 107(a)(3) and § 113(f) should be read together as constituting a single cause of action, "[c]laims by PRPs ... seeking costs from other PRPs are necessarily actions for contribution, and are therefore governed by the mechanisms set forth in § 113(f)." *Id.* at 350.[4]

The Sixth Circuit found that "[c]ontribution ... under both the common law and § 113(f) applies in claims such as these where a potentially responsible party has been compelled to pay for response costs for which others are also liable, and who seeks reimbursement for such costs." *Id.* at 352. The court clarified that a plaintiff could not bring a § 107(a) claim, regardless of whether it had been found liable or settled its liability with the government, once it acted "under some compulsion or legal obligation to an injured party when [it] discharged the payment." *Id.* at 351 (citations omitted). Accordingly, the Court found that a § 106 order "requiring cleanup in the face of penalties or fines clearly satisfies such a requirement." *Id.* at 352.

The *Centerior* Court observed that the plaintiffs admitted to being PRPs, never asserted their innocence or challenged their liability under § 107(a), were subject to a legal obligation (pursuant to a § 106 order) to conduct the site cleanup, had paid more than their fair share in conducting the cleanup, and were subsequently seeking to recoup costs from other PRPs who also contributed to the site contamination but who had not contributed their pro rata share. This, the Court stated, "is the 'quintessential' action for contribution." *Id.* at 351 (citations omitted). The Sixth Circuit concluded that plaintiffs who themselves are PRPs, and are "compelled to initiate a hazardous waste site cleanup, may not bring an action for joint and several cost recovery [under § 107(a) ], but are limited to actions for contribution governed by the mechanisms set forth in CERCLA § 113(f)." *Id.* at 356.

In the case *sub judice*, Plaintiffs have entered into a Consent Decree with the United States and Arkansas. *See* Consent Decree: South 8th Street Landfill Superfund Site and Gurley Pit Superfund Site, Civil Action Nos. J–C–98–362, J–C–98–363 (E.D. Ark., entered on December 19, 2000) ("Consent Decree"). Without admitting liability, Plaintiffs agreed to implement:

> response actions at the South 8th Street Site ... [and] to reimburse [the United States' and Arkansas'] response costs and to resolve all claims for Past and Future Response Costs at the South 8th Street Site and the Gurley Pit Site between the [United States and Arkansas] and [Plaintiffs] as provided in this Con-

**4.** In doing so, the court noted that at least five other Courts of Appeals had all reached the same conclusion. *See id.* at 349 (citing *United Technologies Corp. v. Browning–Ferris Indus. Inc.*, 33 F.3d 96, 101 (1st Cir.1994), *cert. denied*, 513 U.S. 1183, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1122 (3d Cir.1997); *United States v. Colorado & Eastern Railroad Co.*, 50 F.3d 1530, 1536 (10th Cir.1995); *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298 (9th Cir. 1997), *cert. denied*, 524 U.S. 937, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998); *Akzo Coatings Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994)).

sent Decree, to resolve the claims of the State and [Plaintiffs] which have been or could have been asserted against the United States with regard to the South 8th Street Site and the Gurley Pit Site, and to provide [Plaintiffs] and the Settling Federal Agencies with protection from contribution actions or claims as provided in this Consent Decree.

*Id.* at 12. Specifically, Plaintiffs agreed to finance and perform all remedial work specified by the EPA with regard to the South 8th Street Site and to reimburse the United States and Arkansas for any past or future response costs. *Id.* Plaintiffs also agreed to pay stiff penalties if they failed to comply with various provisions in the Consent Decree. *Id.* at 52–53.

Under these circumstances, Plaintiffs cannot, as a matter of law, assert a § 107(a) claim. Pursuant to the Consent Decree, Plaintiffs, as PRPs, accepted responsibility for cleaning up the South 8th Street Site and for paying the EPA's and Arkansas' expenses incurred in cleaning up the Gurley Pit Site. Thus, as in *Centerior,* Plaintiffs are PRPs who are "compelled to initiate a hazardous waste site cleanup," and as such "may not bring an action for joint and several cost recovery [under § 107(a)], but are limited to actions for contribution governed by the mechanisms set forth in CERCLA § 113(f)." *Centerior,* 153 F.3d at 356. *Accord United Technologies Corp.,* 33 F.3d at 101; *New Castle County,* 111 F.3d at 1122; *Colorado & Eastern Railroad Co.,* 50 F.3d at 1536; *Pinal Creek Group,* 118 F.3d 1298; *Akzo Coatings Inc.,* 30 F.3d at 764 (7th Cir.1994). Moreover, as in *Centerior,* Plaintiffs are subject to fines or penalties for any failure to comply with the Consent Decree. *See Centerior,* 153 F.3d at 344. As such, Plaintiffs "clearly satisfy ... [the] requirement" that they proceed only under § 113(f). *Id.*

Although Plaintiffs rely on the fact that they have not been adjudged liable for either cleanup, but have merely resolved their liability by entering into the Consent Decree, *Centerior* makes clear that an adjudication of liability is not a factor in determining whether or not Plaintiffs may bring a § 107(a) claim. *Centerior,* 153 F.3d at 351–52 (stating that the proper inquiry is whether plaintiffs "act under some compulsion or legal obligation to an injured party when [they] discharge[ ] the payment.") (citations omitted). Likewise, other Circuits have held that any party resolving liability by entering into a consent decree or other settlement "is required to use section 113, and only section 113, to obtain an equitable redistribution of liability among other [PRPs]." *New Castle County,* 111 F.3d at 1124 n. 8 (quoting 42 U.S.C. § 9613(f)(3)(B)); *see also Redwing Carriers Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir.1996) (PRP who disavows liability in Consent Decree is still required to pursue a contribution claim under § 113, not § 107).

Plaintiffs also rely on language in *Centerior* to the effect that the decision did not address whether PRPs who initiate cleanups "voluntarily without any governmental prodding" or " 'innocent' PRP[s] who [have] not contributed to site contamination may nevertheless seek joint and several cost recovery[ under § 107(a) ]." *Centerior,* 153 F.3d at 355 n. 10. That language, however, is entirely inapplicable to Plaintiffs. As Mueller points out, prior to receiving a § 106 Order from the EPA regarding cleanup of the South 8th Street Site and being sued by the EPA and ADPC & E regarding cleanup of the Gurley Pit Site, Plaintiffs had not voluntarily initiated cleanups of either Site. *See* Br. Of Def. at 4; Compl. at ¶¶ 97–99. Instead, Plaintiffs began cleaning and paying for cleanup of the Sites only after they entered into the Consent Decree.

Plaintiffs' assertion that they fall within *Centerior*'s exception for innocent PRPs also must be rejected. While not explicit in the *Centerior* footnote, the few courts that have adopted an "innocent PRP" exception made clear that the term "innocent PRPs" refers only to PRP landowners who had hazardous waste dumped on their property without their knowledge or assent. *See Morrison Enterprises v. McShares, Inc.*, 302 F.3d 1127, 1134 (10th Cir.2002) ("A few federal appeals court decisions have also indicated in dicta that even PRPs who cannot rely on the defenses in § 9607(b) might nonetheless be able to proceed under § 9607(a) if the PRPs are liable *only because they own the property in question and have not contributed to the site contamination.*") (citing *In re Reading Co.*, 115 F.3d 1111, 1120 (3d Cir. 1997)) (emphasis added). *See also Nutra-Sweet Co. v. X–L Eng'g Co.*, 227 F.3d 776, 784 (7th Cir.2000); *Reardon v. United States*, 947 F.2d 1509, 1528 (1st Cir.1991). Plaintiffs do not allege in their Complaint that they are innocent landowners, so the "innocent PRP" exemption cannot apply to them. Moreover, this Court rejects any attempt to read an innocent PRP exemption for non-landowners into § 107(a). As just discussed, *Centerior* made clear that the critical inquiry in finding § 107(a) inapplicable was not a finding of liability but Plaintiffs' legal compulsion to pay or cleanup a Site, under the threat of fines for noncompliance, regardless of liability. Therefore, any reliance on innocence in finding an exemption is inconsistent with *Centerior's* interpretation of § 107(a). *See, e.g., McShares*, 302 F.3d at 1134 (holding that an "innocent PRP" exception

"does not square with the underlying purposes of CERCLA."). Further, § 107 already has three specifically enumerated exceptions, none of which allow non-landowner "innocent PRPs" to bring § 107(a) claims. 42 U.S.C. § 9607(b). The Court rejects Plaintiffs' invitation to add an additional exception by judicial fiat.[5]

Finally, Plaintiffs attempt to preserve their § 107(a) claims by arguing that a subset of seven Plaintiffs, who allege only § 107(a) and not § 113(f) claims, should be allowed to press their § 107(a) claims because they have neither been sued by the government nor subjected to any Order regarding the Gurley Sites. *See* Pls.' Mem. at 3–4. The Court rejects this argument because these seven Plaintiffs filed the same Complaint and entered into the same Consent Decree as the other Plaintiffs. No effort was made to distinguish between the obligations of " § 107(a)" and " § 113(f)" Plaintiffs in either the Complaint or the Consent Decree. As such, these seven " § 107(a)" Plaintiffs are also PRPs who are legally compelled to pay for the cleanup of hazardous waste Sites, under threat of penalties for noncompliance, and therefore cannot bring a § 107(a) claim under *Centerior*.

### C. The Dismissal of Count I of the Complaint Shall Apply to All of Mueller's Co–Defendants In the Above–Titled Matters

Because the reasons for dismissing this § 107(a) claim apply equally to Mueller's co-Defendants who have not joined Mueller's motion, and because the propriety of the § 107(a) claim has been fully argued

---

**5.** Indeed, if Plaintiffs are innocent, the equitable distribution required under § 113 should accommodate this innocence and distribute costs accordingly. *See McShares*, 302 F.3d at 1135 ("If the plaintiffs are truly 'innocent PRPs,' then there should be little difficulty in making the additional required showing that

the defendant PRPs should bear the entire cost under the equitable factors.") (citing *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 n. 3 (9th Cir.1997)); *see also Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir.2001).

by both sides, the Court exercises its discretionary power and dismisses the § 107(a) claims asserted against all Defendants in the above-titled actions. *See* Wright & Miller, *supra*, § 1357, at 301 ("Even if a party does not make a formal motion, the court on its own initiative may note the inadequacy of [a claim within] the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair.").

## IV. *Conclusions*

For the above-stated reasons, Defendant's motion to dismiss Count I of the Complaint is GRANTED. Count I of the Complaint is hereby stricken from the Complaints filed in the above-titled actions.