RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

RANDALL MILLS,

        *Plaintiff-Appellant,*

    *v.*

WEAKLEY E. BARNARD, et al.,

        *Defendants,*

SHARON D. JENKINS, in her individual and official capacities as an agent of the Tennessee Bureau of Investigation,

        *Defendant-Appellee.*

> No. 16-6597

─────────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 1:14-cv-00150—William J. Haynes Jr., District Judge.

Argued: June 21, 2017

Decided and Filed: August 28, 2017

Before: BOGGS, GRIFFIN, and WHITE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Michael J. Wall, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellant. Dawn Jordan, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael J. Wall, James G. Stranch III, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellant. Dawn Jordan, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

    BOGGS, J., delivered the opinion of the court in which WHITE, J., joined. GRIFFIN, J. (pp. 18–21), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.   This suit involves three main questions: (1) whether plaintiff Randall Mills sufficiently pleaded a claim for malicious prosecution under 42 U.S.C. § 1983; (2) whether Mills sufficiently pleaded a claim for fabrication of evidence under § 1983; and (3) whether Mills sufficiently pleaded a *Brady* claim.   The district court found that Mills had not so pleaded and granted defendant Sharon Jenkins's motion to dismiss on those claims.   We reverse the district court on all three issues, holding that the complaint contains the requisite facts to constitute viable claims on all counts.

I

On the evening of March 15, 1999, twelve-year-old C.M. slipped out of her house while her mother was out of town.   Her sister Jennifer, and her sister's boyfriend, Robert Hodge, realized that C.M. was missing and searched the house and neighborhood for her.   Upon their return to the house, the two found C.M. sitting on the front doorstep, disoriented.   When asked where she had been, C.M. initially told her sister that she had been in the backyard but changed her story when confronted with the fact that Jennifer and Robert had searched the backyard. C.M. then stated that she had been at the house of Randall Mills, her next-door neighbor, and he had smoked marijuana with her and fondled her.   Jennifer and Robert went to Mills's home and confronted him in front of his two sons, accusing him of providing drugs to and sexually assaulting C.M.   The Lewisburg, Tennessee, police were informed and began an investigation, during which C.M. also alleged that Mills provided her with Valium.   A few days into the investigation, Mills turned himself over to the custody of law enforcement.

On July 21, 1999,[1] Mills was indicted for digital and oral sexual contact with a minor and casual exchange of a controlled substance.   According to Mills, on August 16, 1999, the

———————————

[1]Although the complaint states that the indictment was returned on March 18, 1999, both parties acknowledge that Mills was indicted on July 21, 1999.   We may recognize the actual date through judicial notice of the document.   *See United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) ("Appellate courts . . . may take

Lewisburg Police Department received a report from the Tennessee Bureau of Investigation ("TBI") that semen had been found in C.M.'s underwear. An officer from the police department then spoke with C.M., and C.M. explained that Mills had engaged in sexual intercourse with her but that she had not reported it because she was afraid that she would get in trouble. As a result, on August 18, 1999, a grand jury indicted Mills once more and added the charge of rape of a child by penile penetration.

That same day, the Marshall County Circuit Court granted an order for the taking of saliva and blood samples from Mills. Sharon Jenkins was the DNA analyst assigned by TBI to review the evidence in Mills's case. After examining the underwear, Jenkins stated that there were two sources of DNA found: C.M. and a male contributor, whose DNA profile was consistent with Mills. Jenkins testified at trial that the likelihood of an unrelated Caucasian individual having the same DNA profile was 1 in 290, and that there was only a 0.3% chance that the DNA belonged to a Caucasian male other than Mills. Complaint ¶¶ 46, 63.[2] Jenkins also testified that her analysis of the underwear yielded "inconclusive data": twelve of the thirteen markers she tested were inconclusive. According to the complaint, toxicology reports contradicted C.M.'s initial claim that she had taken Valium and that Mills had smoked marijuana.

A jury convicted Mills of rape of a child, aggravated sexual battery, and casual exchange of a controlled substance, and he was sentenced to serve twenty years in prison. Mills unsuccessfully appealed his convictions in state court and later sent a petition for a writ of habeas corpus to the Office of the Federal Public Defender for the Middle District of Tennessee. The

---

notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (quoting *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007)).

[2]We note that the complaint argues that Jenkins stated that "there was a 1 in 290 chance that the semen came from any Caucasian other than Mr. Mills" and that "there was only a 0.3% chance that the DNA she had analyzed belonged to a Caucasian male other than Mr. Mills." These statements, if made, would be flatly untrue. The correct statement would be that 1 in every 290 white males would have such a marker and thus, for example, in a city with 29,000 white males, 100 such men would have the same marker. Indeed, the district court, in quoting the state-post-conviction opinion on Jenkins's testimony, provided the correct statement that the chance of "an unrelated individual having the same DNA profile . . . in the Caucasian population was 1 in 290." *Mills v. Barnard*, No. 1:14-CV-00150, 2016 WL 5819787, at *4 (M.D. Tenn. Sept. 30, 2016) (quoting *Mills v. State*, No. M2011-00620-CCA-R3-PC, 2013 WL 6069276, at *24 (Tenn. Crim. App. Nov. 19, 2013)). At this stage, however, we have no knowledge of what was in Jenkins's report other than the allegations made in the complaint.

Federal Public Defender, working together with the Innocence Project, sent the preserved DNA evidence and underwear from Mills's trial to a private DNA laboratory, the Serological Research Institute ("SERI"). The SERI analysts were unable to retest the exact portions of the underwear that Jenkins had used because, according to Gary Harmor (an expert from SERI), those samples were "gone." Additionally, Mills's own samples had biodegraded, and he provided new samples to SERI. In performing the tests, Harmor took one sample from a portion of the underwear adjacent to the sample taken by Jenkins and three other samples from different locations on C.M.'s underwear. Using the "same analysis techniques as those used by" Jenkins, Harmor concluded that the underwear contained semen from two different male contributors and that neither of those contributors was Mills.

In May 2009, Mills filled a petition for a writ of error coram nobis before the state court. After evidentiary hearings, the Marshall County Circuit Court on post-conviction review granted Mills a new trial on the rape-of-a-child charge on January 26, 2011, but denied relief on the remaining charges. Mills appealed. In April 2011, after having served eleven years in prison, Mills was released on time served in exchange for signing a release of claims while his appeal was pending. In November 2013, the Tennessee Court of Criminal Appeals overturned all of Mills's convictions, finding that the new DNA evidence called into question the critical testimony of C.M. at trial. *Mills v. State*, 2013 WL 6069276, at *26. In 2014, Mills filed a motion to dismiss the indictment, and the State responded with a *nolle prosequi* motion. The Marshall County Circuit Court entered a *nolle prosequi* order on April 4, 2014.

On November 19, 2014, Mills filed suit under 42 U.S.C. §§ 1981, 1983, and 1985 in the United States District Court for the Middle District of Tennessee. In his action, he named as defendants Weakley Barnard (the Assistant District Attorney General for the Tennessee Seventeenth Judicial District, including Marshall County), Jenkins (the TBI DNA analyst), and Beth Rhoton (a police investigator with the Lewisburg Police Department) in both their individual and official capacities; Mark Gwyn (the Director of the TBI) in his official capacity; Marshall County; and the City of Lewisburg. Mills claimed that: (1) he was subjected to malicious prosecution and "a conspiracy to cover-up the truth" in contravention of the Fourth, Thirteenth, and Fourteenth Amendments; (2) Barnard, Jenkins, and Rhoton conspired to deprive

Mills of his constitutional rights; (3) the City of Lewisburg and Marshall County ratified and condoned the unconstitutional actions taken against Mills; and (4) Barnard and Jenkins falsely imprisoned Mills in violation of Tennessee state law. The district court construed Mills's assertion that Barnard, Jenkins, and Rhoton manufactured "knowingly false inculpatory evidence" against him and suppressed "exonerating exculpatory evidence" as a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). After all defendants moved to dismiss Mills's suit, the district court granted the motions. The court determined that the Fourth Amendment false-arrest and false-imprisonment claims were time barred by the statute of limitations; Mills's claims for money damages against Jenkins, Gwyn, and Barnard were barred by the Eleventh Amendment; Gwyn was protected by absolute prosecutorial immunity; probable cause existed and therefore defeated Mills's malicious-prosecution claims against the defendants; any *Brady* claim failed because the new DNA findings were based on "material that Jenkins did not have" or test; and the other constitutional claims were insufficiently pleaded to survive a Rule 12(b)(6) motion. Mills timely appealed the district court's judgment "only insofar as [it] dismissed the claims against . . . Jenkins" and only in her individual capacity. Appellant's Br. 13.

II

We examine de novo the grant of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 395–96 (6th Cir. 2016). In order to defeat a motion to dismiss, a plaintiff must "allege[] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In reviewing a complaint, we construe it "in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

A. Malicious Prosecution

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), we set out the elements of a malicious-prosecution claim under the Fourth Amendment. Those elements are (1) "that a

criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute'"; (2) "that there was a lack of probable cause for the criminal prosecution"; (3) "that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty' . . . apart from the initial seizure"; and (4) that "the criminal proceeding must have been resolved in the plaintiff's favor." 625 F.3d at 308–09 (alterations in original) (first quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007), then quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007)). There appears to be no dispute that Mills suffered a deprivation of liberty and that the proceeding was eventually resolved in his favor, leaving us to resolve the first and second elements.

The district court rested its decision on the fact that the superseding indictment was returned before any DNA analysis had been performed and, therefore, that probable cause for Mills's prosecution had been conclusively established by the grand-jury indictment. In coming to this conclusion, the district court cited *Webb v. United States*, 789 F.3d 647 (6th Cir. 2015), which stated the general rule that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Id.* at 660 (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)). The district court was quite right, as a general rule. There is, however, an exception to this rule, applicable to this case, where probable cause can be demonstrated to be based on intentional, knowing, or reckless falsehood.

The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person. In this case, however, the indictment conclusively determines that probable cause existed for Mills's detention, at least before the DNA test. *See, e.g.*, *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017), *as amended on denial of reh'g* (Mar. 20, 2017). But the § 1983 version of "malicious prosecution" is not limited to the institution of proceedings; it can also support a claim for "continued detention without probable cause." *Id.* at 728 n.4 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 749–50 (6th Cir. 2006)); *see also Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (describing potential § 1983 malicious-prosecution claims as "concerning the initiation or *maintenance* of a prosecution" (emphasis added)); *cf. Gray v. Cuyahoga Cty. Sheriff's Dep't*, 150 F.3d 579 (6th Cir.) (permitting a suit claiming deprivation of liberty in a case of mistaken

identity after arrest based on a similar description, where merely comparing mug shots would have dissolved probable cause), *opinion amended on denial of reh'g,* 160 F.3d 276 (6th Cir. 1998).

The existence of an indictment is thus not a talisman that always wards off a malicious-prosecution claim. Instead, "even if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect." *Webb*, 789 F.3d at 670. We recently held in *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017), that pre-indictment nontestimonial acts that were material to the prosecution of a plaintiff could rebut the presumption of probable cause established by a grand-jury indictment. *Id.* at 587–88. For this exception to apply, a transgressing officer must have acted "knowingly or recklessly" in making false statements that were material to the prosecution. *Id.* at 583 (quoting *Webb*, 789 F.3d at 660). In this case, where the DNA report was the linchpin of the prosecution's probable cause, the fact of a pre-existing indictment does not trump the fact that—if the complaint's allegations are taken as true, as we must take them—Jenkins termed exculpatory evidence "inconclusive" "despite clear evidence that CM's underwear contained semen from multiple men that [were] not Mr. Mills."

Relieved of the assumption that the grand-jury indictment resolves the issue of probable cause, one quickly perceives how reliant the prosecution's case was on Jenkins's results. C.M.'s initial story had changed multiple times, including an escalation from sexual battery to rape. Her claim that Mills had given her Valium was contradicted by her toxicology report, and her description of events, which included Mills smoking several marijuana cigarettes and tossing one out of the window, was not supported by physical evidence (according to the complaint, Mills's toxicology report showed no trace of marijuana in his system, the window was closed, and no marijuana was found in or outside of Mills's home). Given this court's (and others') wariness about basing probable cause solely on the allegations of a child, *see Wesley v. Campbell*, 779 F.3d 421, 430 (6th Cir. 2015), the revelation of evidence that Mills had been excluded as the source of DNA found in C.M.'s underwear would have collapsed the foundations of the prosecution's probable cause (at least based on the account provided in Mills's complaint).

Mills's complaint is sufficiently well-pleaded to establish the element that there was a lack of probable cause for the prosecution following Jenkins's DNA analysis.

*Gregory*, 444 F.3d 725, confirms this understanding of the law of malicious prosecution. In *Gregory*, the evidence consisted of hairs recovered at the scene rather than DNA. *Id.* at 744. Gregory claimed that Katz, a forensic expert, had "knowingly withheld the existence of" nonmatching hairs that had been recovered or, in the alternative, withheld the knowledge that none of the hairs matched him. *Ibid.* This court held that the allegation that "had Katz not unlawfully suppressed exculpatory information[,] . . . probable cause for Plaintiff's continued detention would have been destroyed" was sufficient to defeat a motion for summary judgment by Katz. *Id.* at 750. It stands to reason that Mills's similar allegation is sufficient to defeat a motion to dismiss.

At oral argument, Jenkins contended that *Gregory* is distinguishable because the hairs were tested before Gregory's indictments and so tainted the ensuing indictments. But the lab report in *Gregory* had not been presented to the grand jury; thus, the grand jury's finding of probable cause was not based on the false report. *Gregory v. City of Louisville*, No. 3:01-cv-535, 2004 U.S. Dist. LEXIS 7046, at *6 (W.D. Ky. Mar. 29, 2004). Rather, the independently determined probable cause that kept Gregory detained was bolstered by the omission of the important evidence that hairs recovered at the scene did not match Gregory's. With a true report, the probable cause crumpled. Just so here, where the withholding of exculpatory evidence propped up the independent determination of probable cause for Mills's ongoing detention. That probable cause also could not stand in the face of the true DNA results.

Mills has also sufficiently pleaded that Jenkins acted in a knowing or reckless manner. To be sure, the plain statement that Jenkins "intentionally, maliciously, [or] with . . . reckless disregard" subjected Mills to malicious prosecution is insufficient standing on its own. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). But the facts and context provided by Mills's complaint offer enough substance to permit us to "draw the reasonable inference that" Jenkins acted knowingly or recklessly. *Id.* at 678. According to the complaint, the DNA found in the underwear "clearly excluded Mr. Mills," but "such evidence

was deliberately and purposefully withheld" by Jenkins. The motivation behind misidentifying the DNA was allegedly "to support and maintain the guilty verdict."[3] In support of his allegations of intentional misconduct, Mills included Jenkins's claims that "she did not make a mistake in her analysis and report." If the DNA clearly exonerated Mills and Jenkins did not make a mistake, then it is plausible that she intentionally misidentified the DNA in order to support the prosecution. Such cases have been known to occur. *See* Kay Lazar, *How a Chemist Circumvented Her Lab's Safeguards*, Bos. Globe, Sept. 30, 2012, https://www.bostonglobe .com/lifestyle/health-wellness/2012/09/29/how-chemist-drug-lab-scandal-circumvented-safeguards /uR3jTdvw4sWe3gLj0m2GnO/story.html (recounting a Massachusetts forensic chemist's illicit practice of intentionally contaminating samples with drugs to make them test positive); Mandy Locke & Joseph Neff, *Part 3: Witness for the Prosecution: Lab Loyal to Law Enforcement*, The News & Observer, Aug. 11, 2010, http://www.newsobserver.com/news/special -reports/agents-secrets/article17704160.html (describing the North Carolina Bureau of Investigation as "often forc[ing] analysts to become advocates, in lock step with police and prosecutors, shaping evidence needed to deliver a conviction"). Mills had to state more than the conclusion that "Jenkins did so intentionally." But by including in the complaint the facts that the DNA results were clearly exonerating under the analysis used by Jenkins, that Jenkins denied making an error in her analysis, and that the incriminating opposite conclusion was provided to prosecutors, Mills's complaint provides sufficient factual context to support a plausible claim that Jenkins intentionally falsified the report.

Turning to the final element of malicious prosecution that Jenkins disputes, it is clear that Jenkins "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Sykes*, 625 F.3d at 308 (alterations in original) (quoting *Fox*, 489 F.3d at 237). As noted in *Gregory*, "forensic

---

[3]At oral argument, Jenkins maintained that the context of this statement is better understood as involving her actions after Mills's prosecution and guilty verdict. But that reading, in addition to being inconsistent with the practice of construing the complaint and all reasonable inferences "in the light most favorable to the plaintiff," is not the best one here. *Directv*, 487 F.3d at 476. The complaint explains that Barnard created a "bizarre hypothetical scenario" where a pair of unidentified men had handled the underwear while it was at the state evidence facility with semen on their hands as an alternative to Mills's allegation that Jenkins had mischaracterized the DNA results. Thus, when the complaint states that "Jenkins had misidentified segments of Mr. Mills's DNA in order to support and maintain the guilty verdict," it is in apposition to an alternate theory of why the original report was consistent with Mills's DNA, not solely Jenkins's later testimony. Therefore, it provides an alleged motivation for why Jenkins would knowingly falsify the report.

examiners act in an investigatory fashion when they interpret and document physical evidence." *Gregory*, 444 F.3d at 740. Investigators are deemed to have participated in a prosecution where "misstatements and falsehoods in [their] investigatory materials . . . ultimately influenced [a plaintiff's] continued detention." *Sykes*, 625 F.3d at 316. Jenkins's findings clearly played a role in Mills's continued detention. *See id.* at 316–17; *Gregory*, 444 F.3d at 749-50; *see also Jones v. Clark County*, No. 16-6281, 2017 WL 2297487 (6th Cir. May 25, 2017). Accordingly, Jenkins's actions—as pleaded—were sufficient to constitute participation in the continued detention of Mills.

Finally, Jenkins argues that Mills should not be permitted to rely upon *Gregory*, as he did not cite it as the basis of his argument for lack of probable cause. An argument is not forfeited on appeal because a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised. *See Leonor v. Provident Life & Acc. Co.*, 790 F.3d 682, 687 (6th Cir. 2015); *see also United States v. Charles*, 843 F.3d 1142, 1147 (6th Cir. 2016) ("The failure to cite *additional* authority for a point does not a forfeiture make . . . ."). Mills had argued below that "[w]hile the victim's statements gave Jenkins's co-Defendants probable cause to preliminarily investigate Plaintiff, it was Jenkins's decision to present a scientifically unsupportable opinion as fact evidence so that it corroborated a version of the victim's description of events that (1) caused the criminal proceeding to advance beyond an investigation . . . ." This argument was sufficient to raise the issue that, despite the initial existence of independent probable cause, Jenkins's analysis was the cause of continued proceedings. Mills is not precluded from supplementing his argument with further legal citation on appeal.

The dissent states that our analysis "conflates two pieces of evidence—the preliminary DNA data and Jenkins'[s] final report interpreting that data" and that if the preliminary data "'clearly excluded Mr. Mills,' . . . that only alleges Jenkins was incorrect, not that she knowingly or recklessly falsified her findings." Dissent Op. at 20. With regard to the dissent's first claim, while it is true that the existence of exonerating information is the source of Mills's claims, the report (and what was omitted from it) is the basis of Jenkins's influence and participation in the decision to prosecute. According to the complaint, Jenkins found "two distinct stains" and

analyzed both. Jenkins prepared a report based on the results of her testing, and sent that report to the prosecutor. The only reference to "data" in the complaint is that "Jenkins claimed that . . .[the] semen other than the one she found to be consistent with Mr. Mills's DNA contained inconclusive data." While inartful, this language does not imply any distinction between raw "data" and Jenkins's report that no conclusion could be drawn from any other physical material. Instead, the complaint adequately alleges that the report (1) fabricated results inculpating Mills, specifically, that Mills's DNA was consistent with the DNA from C.M.'s underwear when it was not; and (2) withheld exculpatory evidence by wrongly stating that other DNA results were inconclusive, when in fact some of those results definitively and clearly exclude Mills. Especially in light of Jenkins's statement that she was not, and had never been, mistaken, the complaint adequately alleges that these untruths were knowing.

Secondly, the dissent states, or at least strongly implies, that "Jenkins did, in fact, provide the [raw] data to the prosecutor," based on the complaint's claim that the prosecutor "never presented [defense counsel] with any of Defendant Jenkins' 'inconclusive' test results." Dissent Op. at 21; Complaint ¶ 49. But even if Mills's complaint is that the prosecutor should have given him the results, the only implication is that the prosecutor did not give the "results" (conceivably raw data), not that the prosecutor ever had any raw data. Because there is no evidence that the prosecutor ever had any raw DNA data, or that the prosecutor would have been able to interpret that raw data even if he did have it, it is Jenkins's alleged misrepresentations that were material.

Because Mills's complaint alleges that Jenkins's intentionally falsified report was material to his prosecution and that the falsities therein provided otherwise lacking probable cause, along with the allegations that he had been deprived of liberty and the criminal proceeding had eventually been resolved in his favor, he sufficiently pleaded a claim of malicious prosecution under 42 U.S.C. § 1983. The district court was in error in holding that the indictment conclusively resolved the issue of probable cause. Accordingly, we reverse the district court's grant of the motion to dismiss with respect to the malicious-prosecution claim.

B. Fabricating Evidence and Withholding of Evidence

As an initial matter, Jenkins argues that both the fabrication and withholding-of-evidence claims are barred by the statute of limitations. She contends that the statute-of-limitations period began to run when the initial rape charge was dismissed on April 26, 2011. Because the statute-of-limitations period for § 1983 suits is determined by state law, the relevant limitations period for the suit is one year. *See* Tenn. Code Ann. § 28-3-104(a); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578 (6th Cir. 1992). As explained in *King*, the limitations period does not begin to run while a criminal indictment on the same charges is outstanding. *King*, 852 F.3d at 579. Accordingly, the statute of limitations did not begin to run until the grant of the prosecution's *nolle prosequi* motion on April 4, 2014, which terminated the criminal proceeding. Mills filed his complaint on November 19, 2014, well within the one-year limit.

Jenkins also contends that Mills insufficiently pleaded and failed to state fabrication and withholding-of-evidence claims. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must make a claim and plead facts plausibly showing that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 679. Merely pleading sufficient facts is not enough, *see id.* at 678, 682, but courts are generous in their interpretation of a complaint to identify causes of actions so long as it provides fair notice to the defendant of the claim, *see Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014); *Fisher v. Dodson*, 451 F. App'x 500, 501–02 (6th Cir. 2011). We address each claim in turn.

*1. Fabrication-of-Evidence Claim.* The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant "knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury." *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). The complaint does not state in so many words that it seeks to maintain a "fabrication-of-evidence" claim. It does, however, allege that Jenkins "subject[ed] Mr. Mills to . . . wrongful conviction . . . in violation of Mr. Mills's Constitutional rights as guaranteed under 42 U.S.C. §[ ]1983 and the Fourth and Fourteenth Amendments." In support of this allegation, Mills charged Jenkins with the "manufacture and intentional misrepresentation of knowingly false inculpatory evidence," as well as the presentation of an "inaccurate" and "[un]true report." In essence, the complaint

alleges that Jenkins falsified the report and data to make the DNA from the underwear appear consistent with Mills's own.

The complaint further alleges that the falsity of the report prevented Mills from "be[ing] able to prove that CM had likely engaged in sexual relations with two other males . . . and that she had lied about her virginity as well as Mr. Mills raping her, fondling her, and providing her with marijuana." In addition, the complaint alleges that the DNA report was the basis of Barnard's success in eliciting guilty verdicts. All of these allegations are taken as true and all reasonable inferences are drawn in favor of Mills at this stage of the proceedings. *Directv, Inc.*, 487 F.3d at 476. These factual allegations are sufficient to show the creation of material known to be false that had an effect on the judgment of the jury. Moreover, the knowing requirement of fabrication-of-evidence claims is satisfied for the same reason as in the malicious-prosecution claim: according to the complaint, the DNA results that were provided by Jenkins were unmistakably exonerating but Jenkins chose to report that they were consistent with Mills's liability in order to support the prosecution's case and a guilty verdict.

The district court combined the fabrication claim and the withholding claim into one, but this was in error. In *Gregory*, this court analyzed separately claims that a forensic expert withheld evidence and that the expert had fabricated evidence. *Gregory*, 444 F.3d at 744–45. This result is sensible, as the claims have different elements, most notably, that one involves the suppression of favorable evidence and the other the manufacture of damaging evidence. *See id.* at 750 (citing favorably *Atkins v. County of Riverside*, 151 F. App'x 501, 505–06 (9th Cir. 2005), which permitted a plaintiff to pursue simultaneously both a fabrication-of-evidence claim and a *Brady* violation claim). Mills has stated a plausible claim that satisfies the elements of a fabrication-of-evidence claim.

*2. Withholding of Evidence.* The district court addressed the withholding-of-evidence claim more directly. It correctly observed that the test for such a claim is derived from *Brady v. Maryland*, 373 U.S. 83 (1963). As explained by the Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995), a violation of due process results where the State suppresses evidence favorable to a defendant that is material to either his guilt or punishment and is of a nature that would have had a reasonable probability of changing the result of the proceeding. *See id.* at 432–33. This court

in *Moldowan v. City of Warren*, 578 F.3d 351 (2009), extended that obligation from prosecutors to police officers and confirmed that it reached forensic experts such as the one in *Gregory*. *Id.* at 381, 397; *see also Gregory*, 444 F.3d at 744.

The source of Mills's *Brady* claim, as distinguished from his fabrication claim, is that there existed additional DNA evidence—classified by Jenkins as "inconclusive"—that was in fact exculpatory.[4] The complaint alleges that Jenkins was responsible for "the suppression of exonerating exculpatory evidence, including, but not limited to, the DNA evidence that clearly excluded Mr. Mills but was labeled as 'inconclusive.'" It further claims that the evidence "was actually exculpatory," but Jenkins's report was "incomplete" and that a full report would have proven that DNA in C.M.'s underwear was "actually conclusively someone else's DNA." These claims map onto the requirements for a *Brady* violation: (1) evidence favorable to a defendant (results that conclusively excluded Mills as contributor of the DNA); (2) that was suppressed; (3) and would have had a reasonable probability of changing the result of the proceeding (the corroboration of C.M.'s testimony by the DNA evidence was the basis of the jury's guilty verdicts).

The district court granted Jenkins's motion to dismiss on the basis that the "new DNA evidence" was "based upon sperm fraction that Jenkins did not have, and additional DNA material that Jenkins did not have." Citing the Tennessee appellate court's findings, *Mills v. State*, 2013 WL 6069276, at *23–25, the district court determined that the new DNA evidence was in fact based on material not available to Jenkins. It would appear that what the district court meant by the "'sperm fraction' material that Jenkins did not have" was the additional DNA material SERI drew from separate areas of the underwear in its independent testing and the "additional DNA material" was Mills's new samples provided to SERI. The district court cited the appellate court decision to quote Mills's expert as "testif[ying] that Jenkins had 'mistakenly identified'" Mills and then noted that such a mental state fell short of a deliberate decision.

---

[4]To be clear, the wrong in the withholding claim is the suppression of exonerating evidence that the DNA results did not match. The wrong in the fabrication claim is producing a false report that stated that the DNA in the underwear was consistent with Mills's DNA.

With respect, the district court went beyond the bounds of a motion to dismiss in considering facts drawn from the state appellate court decision to determine whether the complaint had sufficiently pleaded a claim. The district court supported its use of the Tennessee appellate decision with a citation to *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736 (6th Cir. 1980). "Usually, consideration of and citation to an earlier case" is permissible for a court at dismissal stage, but not when a lower court "[takes] *judicial notice of facts* in the opinion" capable of reasonable dispute. *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991). Courts should not take judicial notice at the Rule 12 stage of the truth of matters subject to reasonable dispute contained in earlier cases. *See Stafford v. Jewelers Mut. Ins.*, 554 F. App'x 360, 369 (6th Cir. 2014).

Limiting review to Mills's complaint, it is clear that the complaint alleges that the DNA evidence suppressed was that which was in Jenkins's possession, not simply the DNA that SERI later tested. The complaint claimed that "the semen results Defendant Jenkins termed 'inconclusive' were actually conclusively someone else's DNA" and that the DNA evidence "used by Defendant Jenkins was actually exculpatory." It further alleged that "Jenkins'[s] 'inconclusive' test results . . . were actually exculpatory and indicative of two different men's semen, neither of whom was Mr. Mills." These allegations do not claim to rely upon new DNA evidence from the SERI tests and, thus, are not subject to the deficiencies asserted by the district court. Nor is there any allegation that Mills's DNA changed in any material way between the original and later samples. To the extent that the district court relied on opinions by Mills's expert in a separate proceeding, it was in error.

## C. Qualified Immunity.

In holding that Mills sufficiently pleaded his claims of fabrication of evidence, suppression of evidence, and malicious prosecution, we determine that at this time qualified immunity is not warranted. Again, in the factually similar *Gregory* case, we stated that it was clearly established by at least 1992 that knowing fabrication of evidence violates constitutional rights. *Gregory*, 444 F.3d at 744 n.8. *Brady* violations are, of course, clearly established violations of constitutional rights. And, as we stated recently, it is also clear that "individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a

defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by, for example, 'knowingly or recklessly' making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." *King*, 852 F.3d at 582–83 (citations omitted).

> Although an officer's "entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point," that point is usually summary judgment and not dismissal under Rule 12. *See Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (observing that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*" (emphasis in original)); *see also Jacobs v. City of Chicago,* 215 F.3d 758, 775 (7th Cir.2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."); *Chesser v. Sparks,* 248 F.3d 1117, 1121 (11th Cir. 2001) ("[Q]ualified immunity is typically addressed at the summary judgment stage of the case."); *Grose v. Caruso,* 284 F. App'x 279, 283 (6th Cir. 2008) ("[T]he standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may be granted, [and] dismissal of Appellants on the basis of qualified immunity is premature.").

*Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (alterations in original) (citations omitted). The dispute here, like that in *Gregory*, appears to be that Jenkins argues that even if the results were incorrect, it was as a result of "[m]ere negligence." But that dispute involves the resolution of facts more appropriately dealt with at the summary-judgment stage or at trial.

III

Mills alleged a state-law claim against Jenkins. The district court declined to exercise supplemental jurisdiction over this claim because it had dismissed all of Mills's federal claims. Because we reverse the district court's dismissal of a number of Mills's federal claims, we also reverse the district court's dismissal of Mills's state-law claim and remand to permit the district court the opportunity "to determine whether to exercise supplemental jurisdiction over [this claim] given the" survival of a number of Mills's federal claims. *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 717 (6th Cir. 2012).

IV

It is important to note that this appeal comes to us at the motion-to-dismiss stage, rather than at summary judgment where more facts are available to the district court. At the next stage, Jenkins may provide evidence that makes it clear that the DNA analytic methods used by SERI differed, that the evidence available to her was not exculpatory, or that her actions were innocent or negligent at worst. But at this stage, the complaint has stated legally cognizable claims. For the foregoing reasons, we **REVERSE** the district court's grant of the motion to dismiss.

---

**DISSENT**

---

GRIFFIN, Circuit Judge, dissenting.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because I conclude that plaintiff's three causes of action do not pass muster under this pleading standard, I would affirm the district court and, accordingly, respectfully dissent.

I.

Plaintiff Randall Mills was wrongly convicted of the rape of a child, aggravated sexual battery, and casual exchange of a controlled substance, after the complainant accused him of providing her with marijuana and engaging in vaginal intercourse with her. The latter accusation was supported by a DNA report prepared by defendant Sharon Jenkins, who reported that Mills' DNA was consistent with one of the two samples taken from the complainant's underwear. Later re-examination of Jenkins' data and additional DNA testing revealed that Mills was not a match and that the results for the second sample, which Jenkins reported as "inconclusive," conclusively excluded him as a possible match. After Mills was exonerated, he filed this § 1983 suit against Jenkins and others involved in his prosecution. Plaintiff raised three separate claims against Jenkins: (1) malicious prosecution; (2) fabrication of evidence; and (3) withholding of evidence ("*Brady*"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Jenkins moved to dismiss all three claims against her. The district court granted the motion, and Mills appealed. Contrary to my colleagues, I would affirm.

II.

A. Malicious Prosecution

A Fourth Amendment malicious-prosecution claim lies against a defendant who, among other things, "knowingly or recklessly makes false statements (such as in affidavits or

investigative reports) or falsifies or fabricates evidence[.]" *King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017). To state such a claim, a plaintiff must plausibly allege that the defendant acted "knowingly or recklessly." *Id.* In this case, there are no factual allegations that Jenkins acted with either mental state. The key paragraphs are 46 and 47 of the complaint. They allege:

> 46. . . . Defendant Jenkins claimed that the segments of underwear containing semen other than the one she found to be consistent with Mr. Mills's DNA contained inconclusive data.

> 47. Later expert analysis revealed that the DNA evidence used by Defendant Jenkins was actually exculpatory, and many of the semen results Defendant Jenkins termed "inconclusive" were actually conclusively someone else's DNA. The report that Defendant Jenkins presented was inaccurate and incomplete, and had a true report been provided to Mr. Mills and [defense counsel] Dearing he would have been able to prove that CM had likely engaged in sexual relations with two other males on March 15, 1999, and that she had lied about her virginity as well as Mills raping her, fondling her, and providing her with marijuana.

These factual allegations neither state nor imply that Jenkins "*knowingly* or *recklessly* ma[de] false statements." *Id.* (emphasis added).

Later in the complaint, plaintiff alleges that Jenkins "misidentified segments of Mr. Mills's DNA in order to support and maintain the guilty verdict." This "in order to" allegation is the kind of general assertion of intent that *can* survive a motion to dismiss, but only if it is accompanied by factual allegations that support a reasonable inference that the defendant acted with the requisite state of mind. *See Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) ("Although 'conditions of a person's mind may be alleged generally,' the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" (quoting Fed. R. Civ. P. 9(b), and *Iqbal*, 556 U.S. at 678)). But again, there are no factual allegations to support that inference. There are, to be sure, allegations that Jenkins "mislabeled" or "misidentified" information, or provided an "incomplete" or "inaccurate" report. But those allegations provide just as much support for the assertion that Jenkins acted negligently. "When . . . the context makes the factual allegations at most consistent with both conduct that is actionable and conduct that is not, more is required to 'nudge the claims across the line from conceivable to plausible.'" *Deom v.*

*Walgreen Co.*, 591 F. App'x 313, 320 (6th Cir. 2014) (per curiam) (bracketing omitted) (quoting *Twombly*, 550 U.S. at 570).

The majority's contrary conclusion relies on a misreading of an inapposite portion of the complaint. The majority states, "According to the complaint, the DNA found in the underwear 'clearly excluded Mr. Mills,' but 'such evidence was deliberately and purposefully withheld' by Jenkins." First, the complaint does not allege that Jenkins withheld her preliminary data. Second, the majority conflates two pieces of evidence—the preliminary DNA data and Jenkins' final report interpreting that data—each of which forms the basis for separate causes of action against Jenkins. Plaintiff's malicious prosecution claim is based on Jenkins' final report in which she concluded that several test results were "inconclusive." Missing from plaintiff's complaint are any factual allegations that Jenkins knowingly or recklessly falsified her findings when preparing that report. The majority relies on the allegation that the preliminary data "clearly excluded Mr. Mills," but that only alleges Jenkins was incorrect, not that she knowingly or recklessly falsified her findings.

Plaintiff's complaint comes "close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (bracketing omitted) (quoting Fed. R. Civ. P. 8(a)(2)). For that reason, I would affirm the district court's decision to dismiss this claim under Rule 12(b)(6).

## B. Fabrication of Evidence

Plaintiff's fabrication-of-evidence claim fails for the same reason. In order to establish this claim, plaintiff must allege that defendant "*knowingly* fabricated evidence against [him], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury." *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) (emphasis added). Again, there are naked assertions that defendant misidentified DNA markers "in order to" support a guilty verdict, but the complaint is lacking factual allegations supporting a reasonable inference that Jenkins *knowingly* manufactured false evidence. What factual allegations there are are merely consistent with liability, which is not enough to state a claim "plausible on its face." *Iqbal*, 556 U.S. at 678. Because there are no factual allegations that "nudge[] [this] claim[]

across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the district court properly dismissed this claim as well.

## C. Withholding of Evidence

Finally, I disagree with my colleagues that the district court erred in dismissing plaintiff's *Brady* claim. To establish this claim, plaintiff must allege, among other things, that Jenkins—*herself*—withheld favorable evidence. *See Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009) (holding that investigators bear "an equally important '*Brady*-derived' responsibility to turn over potentially exculpatory evidence to the prosecutor's office." (quoting *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008))).

The majority asserts that Jenkins withheld exculpatory evidence when she reported several of the test results as "inconclusive." But my colleagues assume that by misreporting her analysis of the data, Jenkins thereby withheld the information she used to make that report. The complaint does not allege that. In fact, the complaint alleges that the *prosecutor*, *Weakley Barnard*, withheld the preliminary DNA information that Jenkins used to complete her final report, indicating that Jenkins did, in fact, provide the data to the prosecutor. That was all that was required of Jenkins, *see id.*, and, as a consequence, she was entitled to dismissal of plaintiff's withholding-of-evidence claim.

## III.

For these reasons, I would affirm the judgment of the district court.