NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0161n.06

No. 19-1451

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 17, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| TODD CHARLES PENN, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| JASON BERGTOLD, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: GUY, SUTTON, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant police officer appeals the district court's denial of his motion for summary judgment based upon qualified immunity on a malicious prosecution claim. Because the prosecution of plaintiff was supported by probable cause, we reverse and remand for entry of summary judgment in favor of defendant Bergtold.

I.

On March 21, 2015, an African-American man activated the security system at the exit of a Bed Bath & Beyond in Novi, Michigan. The alarm indicated he may not have paid for all of the items in his possession. But it "didn't faze him. He just proceeded to walk out [of the store]." A store employee called 911.

Jacob Leonard and Kathleen Simons, two store employees, followed the man ("the thief") out of the store and confronted him in the parking lot. He "turned around and said, I'm an

officer. . . . I'm a police officer; . . . you don't have the right to ask me [questions]." Another store employee, Kelly Gauthier, joined them. The man then left the belongings and walked toward the other end of the strip mall.

Defendant Officer Jason Bergtold responded to the scene. He first spoke with Simons and Gauthier. Simons conveyed that the thief "identified himself as a police officer" and was "[a]n older black male, [wearing a] black Pea coat, gray hat, and . . . blue jeans." The physical description Gauthier gave was similar; she also said the thief was "unusual" and "unstable." Gauthier then told Bergtold that she last saw the thief walking towards the other end of the strip mall. So Bergtold searched that area. There he noticed a man, plaintiff Todd Penn, whom he believed to be similar to the description of the thief.

Defendant's dashboard camera recording system captured his first interaction with plaintiff. Just a few aspects of that recording are pertinent here. Penn unequivocally denied patronizing the Bed Bath & Beyond. When Officer Bergtold asked Penn where he worked, Penn replied that he was "one of you all" (he worked for a local sheriff). And in response to whether he was armed, Penn responded that he was because he "work[ed] for you guys."

The description of the thief the store employees had given to defendant, however, did not *exactly* match plaintiff. On the one hand, there were significant similarities. Both were older, African American men; were in the same geographic area; were wearing a cap, a black jacket, and long pants; and identified themselves as a law enforcement official. But on the other hand, dissimilarities existed: Penn was wearing a brown hat, not a "grayish" one; Penn's pants were brownish-green and cargo, not blue jeans; Penn was wearing a "black North Face puffy coat," not a "flat . . . pea coat"; and although Gauthier had described the thief as "unstable," Officer Bergtold considered Penn "relatively calm" and not "aggressive."

Penn and Officer Bergtold then went to the Bed Bath & Beyond store. While Penn was outside the store, Officer Bergtold went inside and had the three employee eyewitnesses—Leonard, Gauthier, and Simons—observe Penn through the store window. Leonard and Gauthier positively identified Penn as the thief. Leonard was "100% sure that Todd [Penn] [wa]s the suspect that took the items." So too was Gauthier, who was "sure that [Penn] [wa]s the man who stole the items." Simons, however, equivocated. She didn't "believe that [Penn was] the [thief]" because he was "taller and larger" than the thief she had confronted. She told Bergold "I'm not sure but I don't think that's the guy. I don't think that's the guy. The guy I saw, and this is what I told [Officer Bergtold], . . . the guy I saw [was] larger, taller, different."

At about the same time, Ferris Anthony, who had been shopping at the mall, approached officers outside the Bed Bath & Beyond. He "told [the officers] you guys arrested the wrong guy. [Penn] was very clearly different than the man that I saw walking out [of the store]." When Officer Bergtold came out of the store, Anthony told him the same thing.

Officer Bergtold arrested Penn for retail fraud nonetheless. Two aspects of his subsequent police report are relevant for our purposes. First, Officer Bergtold stated Simons "positively identified" Penn as the thief and that Ferris was "positive that [Penn] was the man who had left the store." (The report, it is worth noting, later states that Simons advised that "she was not 100% sure that [Penn] was the suspect."). Second, Officer Bergtold wrote that "one of the first things [Penn] told [Officer Bergtold was] that . . . 'I am one of you.'" On the basis of Officer Bergtold's police report, a detective submitted the case to the Oakland County Prosecutor's Office. The Oakland County Prosecutor ultimately tried Penn for retail fraud, and the jury acquitted Penn.

Following his acquittal, Penn commenced this 42 U.S.C. § 1983 action for false arrest and malicious prosecution against Bergtold. The district court held defendant was entitled to qualified

immunity on the false arrest claim, but not for the malicious prosecution claim. Defendant timely appealed.[1]

II.

We first briefly address plaintiff's contention that we lack jurisdiction to adjudicate this appeal. We have the authority to resolve an appeal from a "final decision" of a district court of the United States. 28 U.S.C § 1291. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Defendant's appeal turns on an issue of law: whether probable cause supported plaintiff's prosecution. *See United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006); *see also Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005) ("[W]here the facts that relate to probable cause are not in dispute, the question of probable cause retains its legal character and should be decided by the judge."). Additionally, here, defendant "concede[s] the most favorable view of the facts to the plaintiff for purposes of the appeal." *Adams v. Blount County*, 946 F.3d 940, 948 (citation omitted). Therefore, we possess jurisdiction.

*Green v. Throckmorton* does not change this conclusion. 681 F.3d 853 (6th Cir. 2012). In that case, the qualified-immunity issue involved whether the defendant police officer possessed probable cause to arrest the plaintiff and "turn[ed] on disputed facts—namely, on [plaintiff]'s ambiguous performance on the field sobriety tests and on whether [the police officer] was being truthful when he claimed that [the plaintiff] could not follow the pen [during a field sobriety test]."

---

[1]Plaintiff did not cross-appeal the district court's resolution of his unlawful arrest claim.

*Id.* at 866. This case, however, does not turn on competing versions of the facts, and Bergtold has conceded Penn's account of the material events.

Penn offers two more arguments for why we lack jurisdiction. Neither one is convincing. First, he argues that because the district court concluded that there were factual disputes for a jury to decide, Bergtold's appeal cannot—as it must—involve only purely legal issues. Although Penn accurately describes the district court's decision, it does not preclude our jurisdiction because Bergtold concedes Penn's version of the facts.

This leads to Penn's second argument: Bergtold does not actually concede Penn's version of the facts. Penn contends Bergtold fails to make necessary concessions because he: (1) does not admit that his police report mischaracterized Penn's representation about being a law enforcement official, and (2) does not accept that the eyewitness identifications were not reasonably reliable information because they stemmed from a suggestive show-up. We are unconvinced. Bergtold does not dispute Penn's claim that the report incorrectly described how quickly Penn shared that information. And whether the eyewitness identifications were reasonably reliable information is a legal question, not a fact question, *see Smith v. Perini*, 723 F.2d 478, 481 (6th Cir. 1983), so Bergtold does not need to concede it.

For these reasons, we have jurisdiction to consider Bergtold's appeal.

III.

Having concluded we have jurisdiction, we turn to the main issue on appeal: whether the district court erred in denying defendant qualified immunity on plaintiff's malicious prosecution claim. Our task, therefore, is to determine whether—on Penn's version of the facts—Officer Bergtold possesses qualified immunity, entitling him to judgment as a matter of law. Under de

novo review, *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019), we conclude that he was so entitled.

"A plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Id.* (citation omitted). To overcome a defendant's assertion of qualified immunity, a plaintiff must demonstrate: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The question here is whether defendant maliciously prosecuted plaintiff in violation of the Fourth and Fourteenth Amendments.

We focus on one element of that claim, "that there was a lack of probable cause for the criminal prosecution." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *United States v. Romero*, 452 F.3d 610, 615–16 (6th Cir. 2006) (citation omitted). There is probable cause to prosecute if "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that [plaintiff] had committed . . . an offense." *Id.* at 615 (third substitution in original) (citation omitted). "[A] reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur." *Id.* at 616 (citation omitted). Bergtold did not personally make the decision to prosecute Penn and it is unclear how the charging decision was made. But the detective who submitted Penn's case to the prosecutor testified that he did no additional investigation beyond reading Bergtold's report and he assumed the truth of its contents. Penn contends that Bergtold's police report contained material, false information, and without that information there was not probable cause to prosecute him.

Due to the qualified-immunity character of this appeal, we must replace the conceded-as-false information in Officer Bergtold's police report with Penn's version of that information. *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001) That means a few differences in the police report: (1) that Anthony said Penn was not the thief; (2) that Simons was not "positive" in her identification of Penn, and more specifically "was not sure" but thought Penn was not "the guy"; and (3) that Penn did not "immediately" make his "one of you" (i.e., fellow law enforcement officer) statement to Officer Bergtold; rather, the statement occurred about sixty seconds after the start of their interaction. We disagree these facts show a lack of probable cause to prosecute Penn.

We begin with the arrest itself. It is well established that "[a] law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). Bergtold had statements from two Bed Bath & Beyond employees that unequivocally identified Penn as the thief. Jacob Leonard saw the thief leave the store, confronted the thief in the parking lot, and positively identified Penn as the thief. Leonard was "100% sure that Todd [Penn] [wa]s the suspect that took the items." The same is true for Kelley Gauthier. She confronted the thief in the parking lot and positively identified Penn as the thief. She was "sure" and "certain" about her identification even though Penn did not exactly match the description of the thief she had given to Officer Bergtold. There being no reason to question these first-hand accounts, Bergtold rightly could presume their "reliability and veracity." *Id.*

On top of that, Bergtold had other, circumstantial corroborating evidence. Penn was in the same general geographic area where the thief had last been seen soon after the alleged theft. Penn's sex, race, and age matched the thief's. Penn's clothing was similar to the thief's clothing. And both Penn and the thief held themselves out as law enforcement officials.

This combination of facts established probable cause for the subsequent prosecution. Most importantly, two witnesses positively identifying plaintiff as the thief; plaintiff's age, sex, and race matching those characteristics of the thief; and plaintiff and the thief both self-identifying as law enforcement were—when "tak[ing] into account the 'factual and practical considerations of everyday life'"—sufficient to "lead a reasonable person to determine that there [was] a reasonable probability" that plaintiff had "committed . . . [the reported] offense." *Romero*, 452 F.3d at 615–16 (citation omitted). The existence of probable cause can of course change as a case develops after an arrest. *See Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017). But Penn asserts that without the report's inaccuracies, there was no probable cause for his prosecution. We disagree. Given the undisputed evidence, there were reasonable grounds for a jury to believe Penn was guilty and there is "no requirement that the defendant to a malicious-prosecution charge must have evidence that will ensure a conviction." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014) (citation omitted).

Accordingly, because there was probable cause to prosecute Penn, his malicious prosecution claim fails. *Mills*, 869 F.3d at 480. Bergtold is therefore entitled to qualified immunity and summary judgment.

Penn offers a few arguments for why probable cause was absent. They are unpersuasive. First, he contends that Gauthier's and Leonard's positive identifications of Penn were not reasonably reliable pieces of information that could support the existence of probable cause. The identifications were unreliable, according to Penn, essentially because the descriptions of the thief did not exactly match Penn. But "[a]n eyewitness identification will constitute sufficient probable cause unless there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his

recollection of the confrontation." *France v. Lucas*, 836 F.3d 612, 626 (6th Cir. 2016) (ellipsis omitted). And an eyewitness's statement need not be consistent with all other available evidence. *See Ahlers*, 188 F.3d at 371. The minor inconsistencies in their descriptions of the thief, in our view, fall short of establishing objective unreliability.[2]

Second, Penn argues that because Bergtold's police report incorrectly stated that Penn "immediately" represented that he was a law enforcement official, his representation must be removed entirely from the probable-cause analysis. This misunderstands the nature of the inquiry we perform regarding the variances between the competing versions of the facts. As we explained above, when a plaintiff and defendant disagree about the details of how an event transpired, we consider whether plaintiff's version of the event supports the existence of probable cause. *Darrah*, 255 F.3d at 312. We do not, as Penn suggests, pretend that the event simply never occurred. The dash cam video shows that plaintiff made the law enforcement official comment about sixty seconds after starting his interaction with defendant. How quickly plaintiff conveyed that information possibly dampens the idea that the thief and Penn had the same modus operandi, but the conveyance of the information—in and of itself—is the important point because the eyewitnesses reported that the thief also made the same representation. Taking "into account the 'factual and practical considerations of everyday life,'" two people both making that unusual

---

[2]Invoking *Gregory v. City of Louisville*, Penn also argues that Gauthier's and Leonard's positive identifications were not reasonably reliable pieces of information because they stemmed from an unduly suggestive show-up. 444 F.3d 725, 731 (6th Cir. 2006). But as the district court ably explained, *Gregory* concerns admitting potentially unreliable show-up identifications as evidence *at trial*. *Id.* at 746–47. *Gregory* does not address whether a police officer may rely on a show-up identification in the context of whether there is probable cause to initiate a prosecution. And in any event, the evidence needed to establish probable cause is less than the amount needed "to establish a prima facie case at trial, [and] less [than the] evidence [needed] to establish guilt beyond a reasonable doubt." *Romero*, 452 F.3d at 616 (citation omitted).

representation—along with the other facts described above—"would lead a reasonable person to determine that there [was] a reasonable probability" that Penn and the thief were the same person. *Romero*, 452 F.3d at 615 (citation omitted).

## IV.

For these reasons, we reverse the part of the district court's order denying Officer Bergtold's motion for summary judgment and we remand for entry of judgment in his favor.